UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED POWER LINE CONTRACTORS,
LLC, and RYAN FARRIS,

      Plaintiffs,

v.                                                   Case No. 1:13-CV-178

ONPOWER, INC. and THOMAS ESCH,         HON. GORDON J. QUIST

      Defendants.
_____/

## **OPINION**

      This case arises out of various business disputes between Plaintiffs, United Power Line Contractors, LLC (UPL) and Ryan Farris (Farris), and Defendants, OnPower, Inc. and Thomas Esch. UPL and Farris assert separate breach of contract claims against OnPower (Counts 1 and 2), and UPL and Farris both assert claims for declaratory relief and breach of fiduciary duty against Esch (Counts 3 and 4). In their breach of contract claims, UPL and Farris assert that OnPower failed to pay them for power line repair services they performed for OnPower. The declaratory judgment and breach of fiduciary duty claims concern the issue of whether Esch acquired an interest in UPL.

      Defendants have filed a motion pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Plaintiffs' claims for lack of personal jurisdiction, improper venue, and failure to state a claim, or, in the alternative, to transfer venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). In addition, Plaintiffs have filed a motion for partial summary judgment on their claim for declaratory relief in Count 3, which seeks a declaration that Esch does not own an interest in UPL.

For the following reasons, the Court will grant Defendants' motion in part by transferring the case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1406(a) and 1631.

I. **BACKGROUND**

UPL is a Michigan limited liability company located in Traverse City, Michigan. Prior to August 2012, UPL had four members, including Farris, his father, Charles Farris, Brian Breneman, and J. Kermit Campbell, with interests of 33%, 32%, 25%, and 10%, respectively. (Dkt. # 19-1 at Page ID 162, 166, 184, ¶ 8.) Farris ran UPL's day-to-day operations, and Charles Farris also worked in the business.[1] Breneman and Campbell were passive investors. OnPower is a Florida corporation with its principal place of business in Florida. Esch is a resident of Florida and the majority shareholder of OnPower. (Dkt. # 16-1 at Page ID 79, ¶ 2.)

UPL and OnPower are both engaged in the business of repairing power lines downed by storms. Esch became acquainted with UPL and Farris through Farris's uncle, Terry Farris, who owns a minority interest in OnPower. In 2010, Esch and Farris discussed Esch acquiring a membership interest in UPL, but no agreement was reached. (Dkt. # 19-1 at Page ID 183, ¶ 2; dkt. # 30-1 at Page ID 452, ¶ 11.) During 2011 and 2012, Esch made several short-term loans to UPL to help with its cash flow needs. (Dkt. # 19-1 at Page ID 183, ¶¶ 3, 4; dkt. # 30-1 at Page ID 452–53, ¶¶ 7–9.) In each instance, UPL repaid the loan with interest.

A. **Facts Relating to Payment Claims**

In August 2012, Hurricane Isaac hit Florida, Louisiana, and several other southern states. Florida Power & Light and Entergy Louisiana hired OnPower to repair power lines damaged by Hurricane Isaac. OnPower retained Farris as an independent contractor to manage OnPower's crews

---

[1] Charles Farris is now employed by OnPower. (Dkt. # 30-1 at Page ID 450, ¶ 5.)

2

and equipment for the Florida Power & Light and Entergy Louisiana contracts. (Dkt. #1 at Page ID 2, ¶¶ 13–14; dkt. # 16-1 at Page ID 80, ¶ 5.) Farris alleges, and OnPower denies, that OnPower has failed to pay him for his work.

In October 2012, "Superstorm Sandy" hit numerous east coast states. Public Service Electric & Gas hired OnPower to repair power lines damaged by the storm. OnPower retained Farris as an independent contractor to manage OnPower's crews and equipment for the Public Service Electric & Gas contract. In addition, in a separate agreement, OnPower retained UPL to provide manpower and equipment for the Public Service Electric & Gas contract. (Dkt. # 1 at Page ID 3–4, ¶¶ 23–26; dkt. # 16-1 at Page ID 80, ¶¶ 6–8.) Farris and UPL allege, and OnPower denies, that OnPower has failed to pay them for their services.

**B.     Facts Relating to Ownership Claims**

In July 2012, UPL was involved in litigation with Breneman and Campbell concerning redemption of their membership interests in UPL. Sometime in July or August, Farris contacted Esch to discuss the possibility of Esch buying an interest in UPL as part of a buy-out of Breneman's and Campbell's interests in UPL. (Dkt. # 24-1 at Page ID 303, ¶¶ 5–7; dkt 30-1 at Page ID 452–53, ¶¶ 12–13.) Shortly thereafter, Farris met with Esch in person in Florida to discuss a possible arrangement whereby Esch would provide funds to redeem Breneman's and Campbell's interests and Esch would acquire a controlling interest in UPL. (Dkt. # 30-1 at Page ID 453, ¶ 13.) In early August, UPL negotiated a settlement agreement with Breneman and Campbell for the redemption of their interests. Farris sent the proposed settlement agreement to Esche and subsequently spoke with Esch about the terms of an agreement for Esch's purchase of an interest in UPL. (*Id.* ¶ 14.) On August 9, 2012, Farris advised Esch that he had finalized the settlement agreement with Breneman and Campbell and that the closing was scheduled for August 13, 2012. Due to the timing

of the closing, the parties agreed that Esch's counsel in Florida would draft a purchase agreement that reflected the terms of the parties' agreement. Over the next few days, Esch's counsel prepared a draft agreement and Esch and Farris discussed its terms. (*Id.* at Page ID 454 ¶ 15.)

On August 13, Esch emailed the purchase agreement to Farris for Farris to sign and wired $330,500 to Farris's counsel's account. (*Id.* ¶ 15.) UPL used the funds received from Esch to redeem Breneman's and Campbell's interests. (Dkt. # 24-1 at Page ID 304, ¶ 8.) However, Farris did not sign Esch's purchase agreement. Instead, on August 15, 2013, Farris asked Esch's accountant to email him the purchase agreement in a Microsoft Word file. (Dkt. # 19-2 at Page ID 221.) On August 22, 2012, Esch's accountant emailed Farris Esch's purchase agreement in a Word file. (Dkt. # 19-2 at Page ID 231.)

On August 24, 2012, Farris delivered a revised version of the purchase agreement (UPL version) containing Farris's signature to Esch's accountant. Neither Esch nor Charles Farris, who was also to be a party under the UPL version of the purchase agreement, signed the revised version of the purchase agreement.

## II. ANALYSIS

Defendants argue that Plaintiffs' claims must be dismissed for lack or personal jurisdiction and improper venue. Alternatively, Defendants request a transfer pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and the witnesses.[2]

As explained below, the Court concludes that the case should be transferred to the Middle District of Florida pursuant to 28 U.S.C. §§ 1406(a) and 1631. However, the Court first addresses two preliminary issues.

---

[2] The Court does not reach Defendants' argument that Farris is not authorized to file suit on behalf of UPL.

First, citing Rule 12(b)'s requirement that "[a] motion asserting any of these defenses [including lack of personal jurisdiction and improper venue] must be made before a pleading if a responsive pleading is allowed," Plaintiffs contend that the lack of personal jurisdiction and improper venue portions of Defendants' motion are untimely. While this language might appear to support Plaintiffs' argument, most courts have held that a defendant's assertion of a waivable Rule 12(b) defense, such as lack of personal jurisdiction, in an answer does not preclude a subsequent motion asserting the defense, so long as it is seasonably asserted. *See, e.g.*, *Sperber v. Elwell*, No. 13-00768, 2013 WL 2934049, at *2 n.2 (D.N.J. June 13, 2013) (rejecting the plaintiff's untimeliness argument because Rule 12(b) "has not been interpreted to preclude the assertion of the defense of personal jurisdiction in an Answer, should that be the defendant's initial responsive pleading"); *CresCom Bank v. Terry*, No. 2:12-cv-00063-PMD, 2012 WL 3115929, at *1 (D.S.C. July 31, 2012) ("By including the defense of lack of personal jurisdiction in his Answer and filing a motion to dismiss before engaging in the litigation process, Terry asserted the defense and did not waive it."); *Yearwood v. Turner Constr. Co.*, No. 09-5945, 2011 WL 570003, at *1 n.3 (E.D. Pa. Feb. 15, 2011) (noting that "courts in this circuit have allowed postanswer motions under Rule 12(b) where, as here, the defense was previously asserted in the answer"). As one court has observed, the argument Plaintiffs make in this case "is at odds with other sections of Rule 12, which suggest that a defendant does not have to assert a personal-jurisdiction defense by raising it in a pre-answer motion, but instead can preserve the defense by including it in the answer." *Bellisio Foods, Inc. v. Prodo Pak Corp.*, No. 07-CV-4520, at *3 n.6 (D. Minn. Nov. 4, 2008); *see also* Fed. R. Civ. P. 12(h)(1)(B) (a party waives the defenses in Rule 12(b)(2)-(5) by failing to either raise the defenses by motion under Rule 12(b) or to include them in a responsive pleading). Here, Defendants' lack of personal

jurisdiction and improper venue defenses are neither untimely nor waived because Defendants asserted both defenses in their answer and raised them by motion soon thereafter.

Second, although Defendants assert their lack of personal jurisdiction and venue defenses as to both Defendants, their evidence and argument pertains only to the claims against OnPower. In other words, Defendants offer no reason why the Court lacks personal jurisdiction or why venue is improper as to the claims against Esch. Accordingly, Esch has waived his personal jurisdiction and lack of venue arguments. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

Defendants contend that venue is improper with regard to Plaintiffs' claims against OnPower. Pursuant to the general venue statute, 28 U.S.C. § 1391, in a civil case, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3). Venue is proper in the Middle District of Florida under subsection (1) of § 1391(b) because Esch resides in Florida and OnPower is a Florida corporation with its principal offices in Naples, Florida. (Dkt. # 16-1 at Page ID 79–80, ¶¶ 2–3.) Venue is also proper in the Middle District of Florida under subsection (2) because a substantial part of the events giving rise

to Plaintiffs' claims against OnPower occurred in Florida. That is, all of the negotiation concerning the alleged contracts occurred in Florida. (*Id.* at Page ID 80, ¶¶ 5–8.) Plaintiffs do not dispute that this district is not a proper venue for their claims against OnPower, nor do they deny that the Middle District of Florida would be a proper venue for those claims. In fact, Plaintiffs do not even address this argument in their response, and thus have waived any argument they might have had. *See Williams v. WCI Steel Co.*, 170 F.3d 598, 607 (6th Cir. 1999).

When venue is improper, a court has discretion to either dismiss the claims or, in the interest of justice, transfer the action to a district in which it could have been brought. 28 U.S.C. § 1406(a).[3] *See also DSSDR LLC v. Zenith Infotech Ltd.*, No. C 12-04336 JSW, 2013 WL 57863, at *2 (N.D. Cal. Jan. 3, 2013) ("If venue is improper, a district court has discretion either to dismiss the action, or in the interest of justice, transfer the action to a district court in which it could have been brought."); *Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 611 (E.D. Va. 2008) (noting that the court had discretion to transfer the action under § 1406(a) even if dismissal was appropriate under a forum selection clause). In addition, "a district court has the power to sua sponte transfer a case." *Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012). Moreover, lack of personal jurisdiction is not an impediment to transfer under § 1406(a). The Supreme Court has held that a district court may transfer an action under § 1406(a) to cure improper venue, even if it lacks personal jurisdiction over the defendants, if the transferee court has personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67, 466 82 S. Ct. 913, 916 (1962).

---

[3] Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Transfer of the entire action to the Middle District of Florida would be preferable to dismissal of only the claims against OnPower and would serve the interest justice. As noted above, venue in this district is improper with regard to the claims against OnPower, and it is likely that this Court lacks personal jurisdiction over OnPower. In contrast, the Middle District of Florida is a proper venue for all claims in this case, and that court has personal jurisdiction over both Esch and OnPower. Transfer pursuant to § 1406(a) would thus cure improper venue and serve "to avoid an obstacle to adjudication on the merits due to lack of personal jurisdiction." *Stone Oak Invs., LLC v. Joseph Equip. Co.*, No. 3:09-CV-00869, 2010 WL 3292963, at *3 (N.D. Ohio Aug. 19, 2010).[4] On the other hand, dismissal of only the claims against OnPower would—assuming that Plaintiffs would refile their claims against OnPower—require the parties to litigate two separate actions involving closely-related, although not identical, claims, resulting in increased time and expense for the parties and inefficient use of judicial resources.[5] Accordingly, the Court will transfer the case to the Middle District of Florida.[6]

---

[4] Because this Court likely lacks personal jurisdiction over OnPower, transfer is also appropriate under 28 U.S.C. § 1631, which allows a court to transfer a civil action to any court in which the action could have been brought in order to cure a lack of jurisdiction. *See Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012) ("[H]aving determined that it lacked personal jurisdiction over Defendants, the district court should have either dismissed the action without prejudice or, in the interest of justice, transferred it to a court that has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 1406(a) or 1631.") (internal citations omitted).

[5] The Court also notes that Plaintiffs apparently do not oppose a transfer, as they failed to respond to Defendants' request for a transfer pursuant to 28 U.S.C. § 1404(a).

[6] Although a transfer will solve venue and personal jurisdiction issues in this case, a potential subject matter jurisdiction issue—which the parties may not have considered—remains. That is, Farris and UPL, a limited liability company, have sued Esch seeking a declaratory judgment that Esch does not own an interest in UPL. If the finder of fact concludes that Esch did, in fact acquire an interest in UPL, the litigation will have been for naught because such a finding would preclude subject matter jurisdiction and thus a decision on the merits. A limited liability company has the citizenship of each of its members. *Delay v. Rosenthal Collins Grp.*, 585 F.3d 1003, 1005 (6th Cir. 2009). If Esch is found to be a member of UPL, diversity would be lacking because UPL, as a plaintiff, would have the citizenship of its members, Farris and Esch. Thus, UPL, as a plaintiff, would not be diverse from Esch, as a defendant. *See Cordts-Auth v. Crunk, LLC*, 479 F. App'x 375, 381 (2d Cir. 2012) (recognizing that a finding that the plaintiff was a member of the limited liability company would have deprived the court of subject matter jurisdiction); *Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, No. 4:10-CV-45 (CDL), 2011 WL 97238, at *1 (M.D. Ga. Jan. 12, 2011) (recognizing that the presence of a limited liability company in a suit between its members would destroy diversity). Because this

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part Defendants' motion to dismiss or, in the alternative, to transfer venue by transferring the case to the Middle District of Florida pursuant to 28 U.S.C. §§ 1406(a) and 1631.

An Order consistent with this Opinion will enter.


Dated: November 7, 2013                                          /s/ Gordon J. Quist
                                                              GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE

---

jurisdictional fact is intertwined so closely with the merits, resolution of subject matter jurisdiction must await trial on the merits. *See Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007) ("If the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point.").